<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ABIRA MEDICAL LABORATORIES, LLC d/b/a GENESIS DIAGNOSTICS,<br><br>Plaintiff,<br><br>v.<br><br>YORK INSURANCE SERVICES GROUP; SEDGWICK CLAIMS MANAGEMENT SERVICES, INC.; SEDGWICK CLAIMS MANAGEMENT SERVICES, LTD.; *et al.*,<br><br>Defendants. | Civil Action No. 23-03525 (GC) (TJB)<br><br><u>**OPINION**</u> |

**CASTNER, U.S.D.J.**

**THIS MATTER** comes before the Court upon Defendants York Insurance Services Group and Sedgwick Claims Management Services, Inc.'s Motion to Dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). (ECF No. 20.) Plaintiff opposed, and Defendants replied. (ECF Nos. 24 & 25.) The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, Defendants' motion is **GRANTED**.

**I.   BACKGROUND**

This is one of more than forty cases that Plaintiff Abira Medical Laboratories, LLC, has filed in the United States District Court for the District of New Jersey or had removed here from the Superior Court of New Jersey since June 2023. In each of these cases, Plaintiff sues "health

insurance companies, third-party administrators, health and welfare funds, or . . . self-insured employers" based on their alleged failure to pay Plaintiff "for laboratory testing of specimen, including but not limited to COVID-19 tests, which [Plaintiff] performed for the insureds/claimants." (ECF No. 16 ¶ 1.)

Plaintiff "is a domestic limited liability company organized under the laws of the State of New Jersey." (*Id.* ¶ 10.) Plaintiff "operated a licensed medical testing laboratory business" that "performed clinical laboratory, toxicology, pharmacy, genetics, and addition rehabilitation testing services on specimen," including "COVID-19 testing." (*Id.* ¶¶ 29-31.) Defendants York Insurance Services Group, Sedgwick Claims Management Services, Inc., and Sedgwick Claims Management Services, Ltd., are alleged to provide health insurance services. (*Id.* ¶¶ 13-14.) In a joint certification submitted by the parties, they represent that York is a New York corporation with citizenship in New York and Tennessee; Sedgwick Inc. is an Illinois corporation with citizenship in Illinois and Tennessee; and Sedgwick Ltd. "is not an entity licensed in any state, and is not likely a proper entity to this lawsuit," and "is an Irish subsidiary of Sedgwick Claims Management Services, Inc."[1] (ECF No. 11.)

Plaintiff alleges that its claims "originate[d] when . . . the insureds/claimants submitted specimen via molecular swabs" and "blood samples . . . at physicians' officers or at a facility, and they were shipped to the laboratory." (ECF No. 16 ¶ 33.) The "laboratory tested the specimens, provided the results to the appointed recipients, and submitted the bill, typically called a claim, to the Defendants for payment." (*Id.*) "Pursuant to the Benefits clauses or provisions of the insurance contracts, Defendants were supposed to pay . . . the claims, pursuant to Abira's fee schedule or the insurer's fee schedule, or typically, negotiate a reasonable fee." (*Id.* ¶¶ 33, 36.) The total amount

---

[1] Because the parties agree that Sedgwick Ltd. is likely not a proper entity to this lawsuit, the Court focuses on the claims against York and Sedgwick Inc.

of payments said to be due and owing is $209,923. (*Id.* ¶¶ 8, 50-51.) And Plaintiff claims that "the insureds/claimants providing their insurance information to Abira, for the purpose of Abira filing claims . . . for payment of lab tests" evidences that "the insureds/claimants designated Abira as their assignee." (*Id.* ¶ 5.) Plaintiff does not identify the individual insureds/claimants or how many insureds/claimants are involved in this case, the type of health insurance plans under which the insureds/claimants were covered, or any specific provisions in any plan that entitles the insureds/claimants to benefits from Defendants.

Plaintiff asserts seven causes of action against Defendants and other unidentified "affiliates" as well as unnamed companies and persons: Count One for breach of contract; Count Two for breach of implied covenant of good faith and fair dealing; Count Three for fraudulent misrepresentation; Count Four for negligent misrepresentation; Count Five for promissory estoppel; Count Six for equitable estoppel; and Count Seven for quantum meruit/unjust enrichment. (*Id.* ¶¶ 42-98.)

This case was removed to this Court from the Superior Court of New Jersey, Mercer County, Law Division, based on diversity jurisdiction pursuant to 28 U.S.C. § 1332. (*See* ECF No. 1.) On September 22, 2023, Plaintiff filed the Amended Complaint, the operative pleading. (ECF No. 16.) On October 19, Defendants moved to dismiss the Amended Complaint pursuant to Rule 12(b)(6). (ECF No. 20.) Plaintiff opposed on November 27, and Defendants replied on November 28. (ECF Nos. 24 & 25.)

## II.   LEGAL STANDARD

On a motion to dismiss for failure to state a claim upon which relief can be granted, courts "accept the factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and assess whether the complaint and the exhibits attached to it 'contain enough facts to state a claim to relief that is plausible on its face.'" *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131,

140 (3d Cir. 2023) (quoting *Watters v. Bd. of Sch. Directors of City of Scranton*, 975 F.3d 406, 412 (3d Cir. 2020)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022) (quoting *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019)). When assessing the factual allegations in a complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements." *Wilson*, 57 F.4th at 140 (citing *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 903 (3d Cir. 2021)). The defendant bringing a Rule 12(b)(6) motion bears the burden of "showing that a complaint fails to state a claim." *In re Plavix Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*, 974 F.3d 228, 231 (3d Cir. 2020) (citing *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016)).

### III. DISCUSSION

#### A. COUNTS ONE AND TWO—BREACH OF CONTRACT & BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

Defendants argue that Plaintiff's breach-of-contract claim should be dismissed because it "fails to identify the actual terms of the actual agreement(s) that Defendants allegedly breached. Rather, the [Amended Complaint] speaks in generalities . . . . [S]imply supposing the existence of a 'benefits clause' that requires automatic and uncritical payment of claims is insufficient to sustain a breach of contract claim." (ECF No. 20-1 at 16-17.[2])

In opposition, Plaintiff makes two arguments. *First*, that it has alleged that it is an "authorized representative" pursuant to 29 C.F.R. § 2560.503-1(b)(4) and that "Defendants have failed to pay for the laboratory services rendered in breach of Defendants['] agreement with the

---

[2] Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

4

claimants (now represented by Abira)." (ECF No. 24 at 8.) *Second*, because "Defendants paid for *some* of the services rendered," this "induc[ed] Abira to continue rendering services upon the reasonable expectation that payments would continue to be made." (*Id.* at 8.) Neither argument is sufficient to plausibly state the breach-of-contract claim.

Under New Jersey law,³ to state a breach of contract claim, a plaintiff must plausibly allege that (1) "the parties entered into a contract containing certain terms"; (2) "plaintiffs did what the contract required them to do"; (3) "defendants did not do what the contract required them to do"; and (4) "defendants' breach, or failure to do what the contract required, caused a loss to the plaintiffs." *Goldfarb v. Solimine*, 245 A.3d 570, 577 (N.J. 2021) (quoting *Globe Motor Co. v. Igdalev*, 139 A.3d 57, 64 (2016)). "The elements necessary to form an implied-in-fact contract are identical to those required for an express agreement," *Matter of Penn Cent. Transp. Co.*, 831 F.2d 1221, 1228 (3d Cir. 1987), and the distinction between an express and implied contract rest on the "method[] of contract formation." *Baer v. Chase*, 392 F.3d 609, 616 (3d Cir. 2004); *see also Wanaque Borough Sewerage Auth. v. Twp. of W. Milford*, 677 A.2d 747, 752 (N.J. 1996) ("[C]ontracts implied in fact are no different than express contracts, although they exhibit a different way or form of expressing assent than through statements or writings.").

When pleading a contract claim, a plaintiff cannot rely on an alleged "general obligation" without tying it to a specific contractual provision. *Perry v. Nat'l Credit Union Admin.*, 2021 WL 5412592, at *2 (3d Cir. Nov. 19, 2021). A plaintiff must state facts that allow for the plausible inference that a contract exists and that provisions in that contract were violated. *See Coda v.*

---

³ Because this Court is sitting in New Jersey and the parties cite New Jersey case law, the Court will accept that New Jersey law applies for purposes of the present motion. *See Argabright v. Rheem Mfg. Co.*, 201 F. Supp. 3d 578, 591 n.5 (D.N.J. 2016) ("Since Plaintiffs have made their allegations under New Jersey law and both parties . . . briefed the sufficiency of the claims under New Jersey law, the Court will, for purposes of deciding the present motion to dismiss, apply New Jersey law . . . .").

*Constellation Energy Power Choice, LLC*, 409 F. Supp. 3d 296, 303 (D.N.J. 2019) ("The plaintiff must . . . specifically identify portions of the contract that were allegedly breached." (quoting *Faistl v. Energy Plus Holdings, LLC*, Civ. No. 12-2879, 2012 WL 3835815, at *7 (D.N.J. Sept. 4, 2012))); *Etrailer Corp. v. Unbeatablesale.com, Inc.*, Civ. No. 21-10172, 2024 WL 1016200, at *4 (D.N.J. Mar. 8, 2024) ("[A] complaint's reference to an agreement and allegation of its breach is insufficient to survive dismissal because those claims are 'legal conclusion[s]' properly disregarded on a Rule 12(b)(6) motion." (citation omitted)); *Riachi v. Prometheus Grp.*, Civ. No. 16-2749, 2016 WL 6246766, at *3 (D.N.J. Oct. 25, 2016) ("Although the Complaint does reference an 'Agreement' between the parties . . . , it does *not* provide any specific details as to when the parties entered a contract, what the terms of the contract were, or how Defendants' actions might have violated those terms. . . . Without more, Plaintiff's Complaint has not plausibly stated a claim for breach of contract.").

Here, Plaintiff has not cited to any specific provision of any contract, including a provision that entitles it to monies from Defendants. It has not even identified the "claimants/insureds" who are alleged to be parties to an insurance contract with Defendants. Instead, Plaintiff first argues that it is an "authorized representative" of currently unidentified "claimants/insureds," citing Employee Retirement Income Security Act of 1974 ("ERISA") regulation 29 C.F.R. § 2560.503-1(b)(4). But Plaintiff has not affirmatively pleaded that the plans at issue are in fact ERISA plans to which the regulation would be applicable. (ECF No. 16 ¶ 3 ("To the extent that the contracts relevant to the underlying claims are governed by ERISA . . . .").) Further, courts have held that the regulation "is limited to internal appeals," not civil actions for benefits. *Prestige Inst. for Plastic Surgery, P.C. o/b/o S.A. v. Horizon Blue Cross Blue Shield of New Jersey*, Civ. No. 20-3733, 2021 WL 4206323, at *3 (D.N.J. Sept. 16, 2021); *Cooperman v. Horizon Blue Cross Blue Shield of New Jersey*, Civ. No. 19-19225, 2020 WL 5422801, at *3 (D.N.J. Sept. 10, 2020) ("This

Court has repeatedly held that this regulation applies only to internal claims and appeals, not to federal lawsuits brought after the plan member exhausts those appeals.").[4] And even if the regulation enabled Plaintiff to sue on behalf of insureds for benefits, Plaintiff would still be required to "identif[y] a particular [plan] provision . . . which . . . entitles [it] to benefits," which Plaintiff has not done. *BrainBuilders, LLC v. Aetna Life Ins. Co.*, Civ. No. 17-03626, 2024 WL 358152, at *7 (D.N.J. Jan. 31, 2024) (collecting cases).

As to Plaintiff's argument that a contract exists because Defendants paid some claims at some point, the Court finds that what is alleged here does not give rise to a plausible claim of an implied contract. Unlike cases where it is alleged that "an out-of-network provider and an insurer regularly dealt with each other, and the provider would obtain preauthorization," *see MedWell, LLC v. Cigna Corp.*, Civ. No. 20-10627, 2021 WL 2010582, at *3 (D.N.J. May 19, 2021) (collecting cases), there is no allegation in this case that Plaintiff obtained preauthorization from Defendants for the services rendered. Preauthorization is often critical when a healthcare provider alleges an implied contract because the "preauthorization from the insurer plausibly manifests to the provider that the insurer will reimburse the provider for the costs of the service." *Gotham City Orthopedics, LLC v. United Healthcare Ins. Co.*, Civ. No. 21-11313, 2022 WL 111061, at *5 (D.N.J. Jan. 12, 2022); *see also MedWell*, 2021 WL 2010582, at *3 ("The allegations that MedWell had a regular billing relationship with Cigna lasting fifteen years, coupled with a pattern of preauthorization, takes the Amended Complaint beyond '[m]erely claiming that an implied

---

[4] This view is shared by courts outside this District. *See, e.g., OSF Healthcare Sys. v. SEIU Healthcare IL Pers. Assistants Health Plan*, 671 F. Supp. 3d 888, 891-92 (N.D. Ill. 2023) ("[I]n the regulations governing ERISA, 29 C.F.R. § 2560.503-1(b)(4) expressly allows authorized representatives like OSF to file *internal* claims and appeals but, importantly, does not confer standing to authorized representatives to pursue civil actions against a plan."); *Park Ave. Aesthetic Surgery, P.C. v. Empire Blue Cross Blue Shield*, Civ. No. 19-9761, 2021 WL 665045, at *7 (S.D.N.Y. Feb. 19, 2021) ("[A] medical provider's status as an Authorized Representative does not . . . independently provide a cause of action pursuant to ERISA.").

contract arose 'from the course of conduct.' . . . Allegations about preauthorization allow an inference of the mutuality of obligation necessary for contract formation, and that is sufficient to survive a motion to dismiss." (quoting *Longenecker-Wells v. Benecard Servs. Inc*, 658 F. App'x 659, 663 (3d Cir. 2016))).

Without preauthorization, Plaintiff's generalized allegation that Defendants paid some claims at some point does not create a plausible basis for the Court to presume that the parties' "course of dealing" satisfies the elements for a contract-based claim. *See, e.g.*, *Ctr. for Special Procs. v. Connecticut Gen. Life Ins. Co.*, Civ. No. 09-6566, 2010 WL 5068164, at *6 (D.N.J. Dec. 6, 2010) (dismissing contract claims where the plaintiff alleged that the defendant paid "for services [the plaintiff] provided to various patients who were . . . insureds or plan members," finding that the allegation did not "allow the Court . . . to discern the alleged terms of [the defendants'] 'promise and/or contract to pay'"); *see also Premier Orthopaedic Assocs. of S. NJ, LLC v. Anthem Blue Cross Blue Shield*, 675 F. Supp. 3d 487, 494 (D.N.J. 2023) ("The Complaint lacks factual allegations showing the parties made an agreement containing 'certain terms,' and so, Premier has failed to state a breach of contract claim." (citation omitted)).

Because the Court finds that Plaintiff has not adequately pleaded the existence of a contract or its breach, the claim for breach of the implied covenant is not plausibly stated. *See, e.g.*, *Hall v. Revolt Media & TV, LLC*, Civ. No. 17-2217, 2018 WL 3201795, at *3 (D.N.J. June 29, 2018) ("Where a plaintiff fails to adequately allege the existence of a contract, plaintiff cannot allege that defendant breached the covenant of good faith and fair dealing."); *Wade v. Kessler Inst.*, 798 A.2d 1251, 1262 (N.J. 2002) ("To the extent plaintiff contends that a breach of the implied covenant may arise absent an express or implied contract, that contention finds no support in our case law."). The breach of the implied covenant claim also appears to be duplicative of the breach-of-contract

claim and subject to dismissal on that basis. *See McMillian v. GEICO Indem. Co.*, Civ. No. 23-01671, 2023 WL 7039535, at *6 (D.N.J. Oct. 26, 2023).

Accordingly, Counts One and Two are dismissed without prejudice.

### B. COUNTS THREE, FOUR, FIVE, AND SIX—FRAUDULENT MISREPRESENTATION, NEGLIGENT MISREPRESENTATION, PROMISSORY ESTOPPEL, AND EQUITABLE ESTOPPEL

Counts Three through Six in the Amended Complaint—for fraudulent misrepresentation, negligent misrepresentation, promissory estoppel, and equitable estoppel—all rely on the same three allegations: (1) "Defendants promised the insureds/claimants in the Benefits clause of the insurance contracts[] that they would cover for the insureds/claimants[] the cost of lab tests for specimen"; (2) "the insureds/claimants appointed Abira as an 'authorized representative'" pursuant to 29 C.F.R. § 2560.503-1(b)(4); and (3) Defendants "sprinkled payments" to Abira "from time-to-time through 2016." (ECF No. 16 ¶¶ 57-59, 65-67, 73-75, 81-82, 85.)

These three allegations, however, are insufficient to plausibly state the claims.[5] As to the alleged "promise" in the insurance contracts, Plaintiff has not identified any "claimant/insured," any plan or type of plan under which they were insured, or the specific provision of any plan that would entitle a claimant/insured to be covered for "the cost of lab tests for specimen." As to the allegation that Plaintiff is an authorized representative, the Court has already explained that the regulation is inapplicable in this case. Finally, as to the allegation that Defendants "sprinkled payments" to Plaintiff on some claims, this generalized allegation does not allow the Court to find that there was ever a misrepresentation or a clear and definite promise on which it was reasonable for Plaintiff to rely. *See, e.g.*, *MHA, LLC v. Amerigroup Corp.*, 539 F. Supp. 3d 349, 360 (D.N.J.

---

[5] There also seems to be a question "as to whether New Jersey courts recognize a claim of equitable estoppel as an independent cause of action." *D'Urso v. BAMCO, Inc.*, Civ. No. 22-03723, 2023 WL 5623945, at *10 (D.N.J. Aug. 31, 2023) (collecting cases). The Court addresses Plaintiff's claims without resolving this conflict—if one exists at all.

9

2021) (dismissing fraudulent misrepresentation, negligent misrepresentation, promissory estoppel, and equitable estoppel claim where the pleading did not go "beyond generalities"); *Premier Orthopaedic Assocs. of S. NJ, LLC v. Aetna, Inc.*, Civ. No. 20-11641, 2021 WL 2651253, at *4 (D.N.J. June 28, 2021) ("These vague allegations as to which services Aetna agreed to cover, and how much Aetna agreed to pay Plaintiff for these services, do not provide sufficient facts to support the plausibility of Plaintiff's breach of contract, promissory estoppel, and accounts stated claims. Each of these claims requires Plaintiff to show the specific terms Aetna agreed to (for breach of contract) or the precise promise Aetna made (for promissory estoppel and accounts stated)."); *Bergen Beverage Distributors LLC v. E. Distributors I, Inc.*, Civ. No. 17-04735, 2017 WL 5714702, at *3 (D.N.J. Nov. 28, 2017) (dismissing negligent misrepresentation claim where the plaintiffs did "not indicate who actually made the statements to whom or when they were made, nor do they indicate how many hours were promised and how many were actually worked"); *Capers v. FedEx Ground*, Civ. No. 02-5352, 2012 WL 2050247, at *2 (D.N.J. June 6, 2012) (dismissing promissory estoppel claim where the allegations were "little more than a recitation of the elements" and the pleading did "not allege any specific facts supporting the claim").

Accordingly, Counts Three through Six are dismissed without prejudice.

C. COUNT SEVEN—QUANTUM MERUIT/UNJUST ENRICHMENT

The quantum meruit/unjust enrichment claim in Count Seven also fails at this time because Plaintiff has not plausibly pleaded that benefits were conferred on Defendants. Indeed, both quantum meruit and unjust enrichment "require[] a determination that defendant has benefitted from plaintiff's performance." *MHA, LLC*, 539 F. Supp. 3d at 361 (quoting *Woodlands Cmty. Ass'n, Inc. v. Mitchell*, 162 A.3d 306, 310 (N.J. Super. Ct. App. Div. 2017)). While district courts in this Circuit have long held that benefits for medical services "inure[d] only to the patients

treated," not the insurers,[6] at least one court in this District has interpreted the Third Circuit's opinion in *Plastic Surgery Center, P.A. v. Aetna Life Insurance Co.* as opening the door for unjust enrichment claims against insurers. *Id.* (citing *Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218, 241 n.26 (3d Cir. 2020)).

In *Plastic Surgery Center*, the Court of Appeals underscored that "where a healthcare provider claims unjust enrichment against an insurer, the benefit conferred, if any, is not the provision of the healthcare services *per se*, but rather the discharge of the obligation the insurer owes to its insured." *Plastic Surgery Ctr., P.A.*, 967 F.3d at 240. And because the obligation the insurer owes typically springs from a plan, the health provider must plausibly establish that a plan exists, the insurer "'received a benefit'—*i.e.*, the discharge of its duties under that plan," and that "retention of that benefit without payment would be unjust." *Id.* at 241 (citations omitted).

Here, even accepting that an unjust enrichment claim could be maintained against Defendants, Plaintiff has not adequately pleaded its claim because its allegations do not plausibly establish that a plan exists under which Defendants "received a benefit." Notably, Plaintiff does not identify any of Defendants' insureds, does not identify what duties Defendants owed to the insureds under the specific terms of any plan, and does not plead allegations that allow this Court to infer that Defendants unjustly retained a benefit under any plan without payment.

Accordingly, Count Seven is dismissed without prejudice.

### D. ERISA STANDING AND TIME BAR

Defendants make several other arguments in their motion that the Court does not reach. For instance, Defendants argue that Plaintiff does not have standing to assert a claim under ERISA.

---

[6]   *See, e.g.*, *Plastic Surgery Ctr., LLC v. Oxford Health Ins., Inc.*, Civ. No. 18-2608, 2019 WL 4750010, at *6 (D.N.J. Sept. 30, 2019) ("[T]his Court 'consistently' dismisses unjust enrichment claims when a healthcare provider sues an insurer for the unreimbursed costs of a procedure performed on an insured.").

Because no ERISA claim is asserted, the Court need not reach the argument, but it agrees that to the extent Plaintiff seeks to plead an assignment of benefits under ERISA, the allegations are insufficient. *See Minisohn Chiropractic & Acupunture Ctr., LLC v. Horizon Blue Cross Blue Shield of New Jersey*, Civ. No. 23-01341, 2023 WL 8253088, at *3 (D.N.J. Nov. 29, 2023) ("[D]istrict courts in the Third Circuit have ruled that a healthcare provider ordinarily must identify a specific patient(s) who has assigned their claim(s) for benefits as well as factual matter that indicates that the provider is proceeding pursuant to an appropriate assignment, such as a copy of the assignment(s) at issue, the relevant language from the assignment(s), or some other evidence of the scope of the assignment(s)." (collecting cases)). In addition, Defendants argue that any claim for benefits should be time-barred. The Court notes that statute-of-limitations defenses are often decided at summary judgment when there are disputes about the accrual date. *See McMillian v. GEICO Indem. Co.*, Civ. No. 23-01671, 2023 WL 7039535, at *7 (D.N.J. Oct. 26, 2023).

### IV.    CONCLUSION

For the reasons set forth above, and other good cause shown, Defendants' Motion to Dismiss (ECF No. 20) is **GRANTED**. An appropriate Order follows.

Dated: May 29, 2024

_____
GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE